IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GREG BRENDEL,                        §
                                     §
                    Plaintiff,       §
                                     §   Civil Action No. 3:15-CV-1928-D
VS.                                  §
                                     §
SCOTT MEYROWITZ, et al.,             §
                                     §
                    Defendants.      §

MEMORANDUM OPINION
AND ORDER

        The instant motion to compel arbitration presents questions of federal and Florida law

and requires that the court decide, among other questions, whether the moving defendants

waived their right to arbitration.  For the reasons explained, the court grants the motion to

compel, orders the parties to arbitrate plaintiff's claims, and dismisses this action with

prejudice.

I

        This is a removed action in which plaintiff Greg Brendel ("Brendel") sues defendants

Scott Meyrowitz ("Meyrowitz"), SSB International, LLC ("SSB"), Mary Meyrowitz

("Mary"), Wells Fargo Bank, and Charles Schwab Bank (collectively, "defendants") arising

from an investment in precious stones.[1]  Brendel alleges that he entered into an agreement

with Meyrowitz whereby, in exchange for a payment of $250,000 to Meyrowitz, Brendel

_____

        [1]Brendel has voluntarily dismissed Charles Schwab Bank and Wells Fargo Bank as
defendants.

would receive 50% of the profits, after full reimbursement of his $250,000 payment, from proceeds received from the sale of precious stones.  Am. Not. of Rem. Ex. J at 3, ¶ 10. Brendel asserts that he wired the sum of $250,000 to Meyrowitz's account at Wells Fargo Bank, held in the name of SSB, but, instead of using the funds as agreed, Meyrowitz converted them to his personal use and refused to return the $250,000 payment or deliver the stones.  Brendel pleads causes of actions for common law fraud, conversion, constructive trust, unjust enrichment, equitable restitution, money had and received, and exemplary damages.[2]  He also requests attorney's fees.

Before this case was removed, a Texas state court granted Brendel's application for a temporary restraining order, restraining defendants from transferring or otherwise disbursing monies from accounts belonging to, or controlled by, Meyrowitz, Mary, or SSB, in an amount not to exceed $250,000.  After a hearing, the state court ordered the sum of $250,000 be deposited into the court registry from a specific account, and it entered a temporary injunction enjoining Meyrowitz, Mary, and SSB from using, spending, commingling, or disbursing funds from that account, in an amount up to $250,000, until the monies were deposited into the court registry or the entry of judgment in the case.

Meyrowitz and SSB filed a motion to compel arbitration in state court, but they removed the case to this court based on diversity of citizenship before the state court convened the scheduled hearing.  Once in this court, Brendel moved to remand the case, and

---

[2]The court does not decide whether these are viable claims.

the court denied the motion.  Meyrowitz and SSB now move to compel Brendel to arbitrate his claims based on the arbitration clause (the "Arbitration Agreement") in the parties' Joint Venture Agreement (the "JV Agreement").  Brendel opposes the motion.

II

As a threshold matter, the court must address Brendel's request under § 4 of the Federal Arbitration Act ("FAA") for a jury trial to determine whether an agreement to arbitrate exists.  The FAA "provides that '[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.'"  *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 709 (5th Cir. 2002) (ellipses in original) (quoting 9 U.S.C. § 4). "Although the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement, or the failure, neglect, or refusal to perform the agreement, it is well-established that '[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one.'"  *Id.* at 710 (quoting *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)).  "[A] party contesting the 'making' of the arbitration agreement must 'make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true . . . and produce some evidence to substantiate his factual allegations.'"  *Id.* (ellipse in original) (alterations omitted) (quoting *Dillard*, 961 F.2d at 1154).[3]

---

[3]In *Chester v. DirecTV, L.L.C.*, 607 Fed. Appx. 362 (5th Cir. 2015) (per curiam), the Fifth Circuit appears to have articulated a somewhat different standard for determining

Brendel merely requests a jury trial.  He makes no attempt to show that the making of the Arbitration Agreement is "in issue."  Accordingly, Brendel has not met his burden of showing that he is entitled to a jury trial.  *Id.*; *see also Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987) ("As the party resisting arbitration, [plaintiff] has the burden of showing that he is entitled to a jury trial under § 4 of the [FAA].") (citation omitted).

And, even assuming *arguendo* that Brendel had attempted to meet his burden, he has not submitted sufficient evidence to substantiate his assertion that he did not agree to arbitrate this dispute.  In *American Heritage* the Fifth Circuit addressed the sufficiency of evidence presented in support of a demand for trial under 9 U.S.C. § 4.  *Am. Heritage*, 294 F.3d at 710.  The appellants in *American Heritage* asserted that they had put the making of the agreements in issue "by alleging that the Agreements [were] unconscionable, the products

---

whether the making of the arbitration agreement is in issue.  *See id.* at 365 n.5.  But *Chester* is an unpublished opinion, and this part of the opinion appears to be *dicta*.  In this circuit, unpublished opinions, and *dicta*, are persuasive, but not binding precedent.  *See, e.g., Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (addressing unpublished opinions); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991) (addressing *dicta*).  *Chester*—an unpublished opinion—must yield to *American Heritage*—a published opinion because published opinions *are* binding.  *See, e.g., Rocha v. Thaler*, 626 F.3d 815, 828 (5th Cir. 2010).

Moreover, even if *Chester* and *American Heritage* were both published opinions, *American Heritage* would control as the earlier of the two.  *See, e.g., United States v. Walker*, 302 F.3d 322, 324-25 (5th Cir. 2002) (per curiam) (declining to follow later issued opinion, to the extent inconsistent with earlier issued opinion, based on circuit rule that "one panel may not overrule a prior panel opinion and the earlier precedent controls"); *see also Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir. Unit B Oct. 1981) ("It is the firm rule of this circuit that we cannot disregard the precedent set by a prior panel," and "when a panel is confronted with two contradictory holdings in this circuit, the court in the latter case would be deemed without power to disregard the precedent established by the earlier panel.").

of unequal bargaining power between the parties, lacking mutuality of obligation between the parties, and failing to result in a meeting of the minds." *Id.* And they submitted affidavit evidence that averred that "Appellees did not explain the Agreements to Appellants or that Appellants did not realize that they were waiving a trial by jury." *Id.* The panel held that appellants' affidavits "amount[ed] to nothing more than hollow, bald assertions that d[id] not approach fraud in the 'making' of the Agreements." *Id.* (citing *Bhatia*, 818 F.2d at 421-22 (stating that self-serving affidavits do not amount to the type of evidence required to call the "making of the arbitration" agreement into question)). It also pointed out that, "[o]ther than their self-serving affidavits, Appellants ha[d] not submitted a whisper of evidence to support the conclusion that a jury trial [wa]s warranted under § 4 of the FAA." *Id.* The panel therefore concluded that "Appellants ha[d] not met their burden to show their entitlement to a jury trial." *Id.*

As in *American Heritage*, the only evidence that Brendel presents is his own affidavit in which he avers that he "signed [the JV Agreement] under stress," and that "[u]pon later reading of [the JV Agreement], there were several things in the document that [he] had not seen, and never agreed to," such as the Arbitration Agreement. P. Resp. 10 (quoting P. App. 6). Without any other supporting evidence, this self-serving affidavit, filled with "hollow, bald assertions," is insufficient to put the making of the Arbitration Agreement in issue. *See Am. Heritage*, 294 F.3d at 710.[4] Because Brendel has not shown that the making of the

_____

[4]In *Chester* the panel concluded that the plaintiff's affidavit stating that he did not sign the arbitration agreement was sufficient evidence to satisfy his "threshold burden and put the

Arbitration Agreement is in issue, he has not met his burden of proving that he is entitled to a jury trial. *See id.* Accordingly, the court denies Brendel's request for a jury trial.

### III

The court now turns to the merits of the motion to compel arbitration. Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4).

When considering a motion to compel arbitration, the court engages in a two-step process. First, the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citation omitted). "This determination involves two considerations: (1) whether there is a valid agreement to

---

making of an arbitration agreement in issue." *Chester*, 607 Fed. Appx. at 364-65 (dicta). The panel distinguished *American Heritage* on two grounds: "First, Chester provide[d] more than 'hollow, bald assertions'; he explain[ed] why he [was] convinced that he did not sign the arbitration agreement. Second, there [was] some corroborating evidence that Chester did not sign the agreement." *Id.* at 364 n.4. But as discussed *supra* at note 3, *Chester* is persuasive authority only, and it must yield to *American Heritage*, as the prior panel opinion, to the extent they are inconsistent. Moreover, *Chester* is factually distinguishable. Brendel admits that he signed the JV Agreement, he does not explain why he failed to take note of the arbitration clause and other terms in the JV Agreement, and there is no corroborating evidence.

- 6 -

arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citations omitted). In deciding whether the parties agreed to arbitrate the dispute, "courts apply the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citation omitted).

Second, the court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). In making the second determination, the court applies the contract law of the particular state that governs the agreement. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004). "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.).

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012) (per curiam). "[T]here is a 'strong federal policy in favor of enforcing arbitration agreements.'" *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Dean Witter Reynolds*, 470 U.S. at 217); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Because of this strong presumption, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (U.S. 1991)).

## IV

The court begins by addressing whether there is an enforceable agreement to arbitrate.

## A

As a threshold matter, the court must decide which state's law governs this question. Brendel maintains that Florida law controls because the JV Agreement that contains the Arbitration Agreement specifically provides that Florida law controls. The JV Agreement's choice of law provision states that "[t]his Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Florida applicable to agreements executed and to be wholly performed within such state." P. App. 26. Meyrowitz and SSB contend that Texas law controls, but they neither explain why Texas law should control nor do they address the JV Agreement's choice of law provision.

A federal court sitting in diversity follows the choice of law rules of the state in which the court sits—here, Texas. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 258 (5th Cir. 2014). "Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Resolution*

*Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *DeSantis*

*v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990)).   Accordingly, the court applies

Florida law to decide whether the parties entered into an enforceable agreement to arbitrate.

*See, e.g., Lopez v. H & R Block Fin. Advisors, Inc.*, 2006 WL 615996, at *3 (N.D. Tex. Mar.

10, 2006) (Fitzwater, J.) ("Because the Employment Agreement provides that it is governed

by the laws of the State of Michigan, the court applies Michigan law in deciding whether [the

parties] entered into an enforceable Arbitration Agreement.").

B

Meyrowitz and SSB contend that they agreed with Brendel in the JV Agreement to

arbitrate disputes arising out of the JV Agreement.   The Arbitration Agreement in the JV

Agreement provides, in pertinent part:

> Arbitration: Any controversy or claim arising out of or in
> relation to this Agreement of the validity, construction or
> performance of this Agreement or the breach thereof, shall be
> resolved by mandatory and binding arbitration in accordance
> with the rules and procedures of American Arbitration
> Association . . .

Ds. Br. Ex. A, at 4-5.[5] Meyrowitz and SSB also rely on Brendel's testimony at the state court

temporary injunction hearing that he signed the JV Agreement, and that the JV Agreement

---

[5]Brendel contends that the JV Agreement submitted in support of Meyrowitz's and
SSB's motion is inadmissible hearsay. "But it is well-settled that '[s]igned instruments such
as . . . contracts . . . are writings that have independent legal significance, and are
nonhearsay.'" *Woodward v. Liberty Mut. Ins. Co.*, 2010 WL 1186323, at *2 n.1 (N.D. Tex.
Mar. 26, 2010) (Fish, J.) (ellipses and alteration in original) (quoting *Kepner-Tregoe, Inc. v.
Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (footnotes, citations, and internal
quotation marks omitted)).   Accordingly, Brendel's objection is overruled.

is the controlling agreement of this lawsuit.  They have also submitted the transcript of

Brendel's testimony, which states, in pertinent part:

| | |
|---|---|
| [Court]: | . . . Did you make an agreement with [Meyrowitz]? |
| [Brendel]: | Yes. |
| [Court]: | Did you get it in writing? |
| [Brendel]: | Yes. |
| [Court]: | Thank you.  I want you to look at [the JV Agreement], tell me whether or not that's the agreement. |
| [Brendel]: | Okay. |
| [Court]: | We'll mark [the JV Agreement] as Exhibit Number 1. |
| [Brendel]: | Yes.  I got the agreement after I had wired the money, as I was traveling and he was traveling. |
| [Court]: | Did you sign [the JV Agreement]?  Did you sign that agreement? |
| [Brendel]: | I did sign this, yes. |
| [Court]: | Is that the operative agreement that you're – that this investment is controlled by, you think, in your opinion? |
| [Brendel]: | Yes . . . |
| . . . . | |
| [Attorney]: | Okay.  And just to recap, it is your testimony that [the JV Agreement] is the same agreement related to the funds you delivered, right? |

- 10 -

[Brendel]:      Yes.

[Attorney]:     Okay.

[Court]:        That is the operative agreement.

[Attorney]:     Okay.

[Court]:        That is the basis of this cause of action, I think.

[Brendel]:      Yeah.  I mean, that's — this is the written —
                along with a discussion with him, the emails he
                sent to me.

Ds. Reply App. 14-16; *see also id.* at 3 (stating the "[JV] Agreement" is marked as "Exhibit 1").  Accordingly, Meyrowitz and SSB maintain that Brendel has already admitted that the JV Agreement, which contains the Arbitration Agreement, is a valid agreement.

The court finds that Meyrowitz and SSB have proved by a preponderance of the evidence, through its introduction of a copy of the signed JV Agreement and a record of Brendel's testimony regarding the JV Agreement, that the parties agreed to arbitrate.

C

Brendel contends that there is no agreement to arbitrate because he never agreed to several of the terms in the JV Agreement.  He maintains that, after he signed the JV Agreement, and "[u]pon later reading of [the JV Agreement], there were several things in the document that [he] had not seen, and never agreed to prior to investing in this matter": the handwritten name at the top of the first page is not his handwriting; he is not listed as a partner and does not know one of the listed partners; he did not agree to arbitrate with Meyrowitz or his company; and he never agreed to partake in any joint venture with

- 11 -

Meyrowitz or his company.  P. App. 6.

When "an issue . . . goes to the 'making' of the agreement to arbitrate[,] the federal court may proceed to adjudicate it."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *see also CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc.*, 2015 WL 5247160, at *6 (Fla. Dist. Ct. App. Sept. 9, 2015) ("[C]hallenges to either party's agreement to the contract in the first instance are exclusively to be determined by the trial court and that, when raised, such challenges must be decided by the trial court before arbitration can be compelled.").  Brendel, however, does not provide any explanation for why he did not see the Arbitration Agreement, or other terms in the JV Agreement, at the time he signed the JV Agreement.  And the mere fact that Brendel did not read these provisions until after he signed the JV Agreement does not affect the formation of the Arbitration Agreement.  As Brendel recognizes in his response, "under Florida law, a party who signs a document is charged with knowing its contents."  P. Resp. 12; *see also Sabin v. Lowe's of Fla., Inc.*, 404 So.2d 772, 773 (Fla. Dist. Ct. App. 1981) (citing *Mfrs. Leasing, Ltd. v. Fla. Dev. & Attractions, Inc.*, 330 So.2d 171 (Fla. Dist. Ct. App. 1976)) ("A party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions."); *Marthame Sanders & Co. v. 400 W. Madison Corp.*, 401 So.2d 1145, 1146 (Fla. Dist. Ct. App. 1981) ("[Plaintiffs] acknowledged, by initial, the general conditions pertaining to the construction contract.  The general conditions contained the provision for arbitration.  The [plaintiffs] must be assumed to have known, and are charged with the knowledge, of the provisions incorporated into the

contract they executed.").

Additionally, the fact that someone other than Brendel printed the name "Greg Brendel" in block letters at the top of the JV Agreement before Brendel signed it does not affect the formation of the Arbitration Agreement. Brendel has not cited any cases that hold that, under Florida law, the names of the parties to a contract cannot be handwritten when the balance of the agreement is typed. Finally, the fact that Brendel is not listed under the "name and residence of each partner" section of the JV Agreement is immaterial, because the JV Agreement clearly states in the first sentence that Brendel is a partner. *See* Ds. Br. Ex. A, at 1 ("This Joint Venture Agreement is effective . . . between [SSB] and [Brendel] (individually or collectively referred to hereinafter as 'Partner' . . . .") (parenthesis in original). And Brendel cites no cases that hold that a contract is not formed if a party to the contract is listed as a "partner" but is not listed under the "name and residence of each partner" section of the contract, or if a party to the contract does not know another contracting party.

D

Second, Brendel maintains that the Arbitration Agreement is not valid because he "signed [the JV Agreement] under stress not knowing what to do to recover the $250,000 that [Meyrowitz] had stolen from [him]." P. Resp. 10 (quoting P. App. 6). Brendel appears to assert a duress claim. But the court declines to reach this issue because Brendel's challenge attacks the entire JV Agreement, not the Arbitration Agreement specifically, and therefore is a question for the arbitrator to decide in the first instance. *See Buckeye Check Cashing, Inc.*

- 13 -

*v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.");

*Prima Paint*, 388 U.S. at 403-04 ("[T]he statutory language [of the FAA] does not permit the federal court to consider claims [regarding the validity] of the contract generally."); *CT Miami*, 2015 WL 5247160, at *6; *ManorCare Health Servs., Inc. v. Stiehl*, 22 So.3d 96, 99 (Fla. Dist. Ct. App. 2009) ("In challenging the validity of an arbitration agreement, a party must assert defenses applicable to all contracts—defenses such as fraud, *duress*, or unconscionability.  A trial court is to review those defenses which go to the validity of the arbitration agreement itself, rather than to the enforceability of the contract as a whole.") (emphasis added) (citations omitted).[6]

And even if this were an issue for the court, the fact that Brendel signed the JV Agreement "under stress" would not affect the validity of the Arbitration Agreement.

---

[6]The Supreme Court has explained:

> Challenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types.  One type challenges specifically the validity of the agreement to arbitrate.  The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

*Buckeye*, 546 U.S. at 444 (internal citations and quotation marks omitted).  "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (citations omitted).  "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."  *Id.*

Brendel cites no cases, and the court has located none, holding that stress alone constitutes duress or can invalidate a contract under Florida law. *See AMS Staff Leasing, Inc. v. Taylor*, 158 So.3d 682, 687 (Fla. Dist. Ct. App. 2015) (citing *Spring Lake NC, LLC v. Beloff*, 110 So.3d 52, 54-55 (Fla. Dist. Ct. App. 2013)) ("[T]he plaintiff did not establish any defenses to arbitration, such as duress or unconscionability. The party seeking to avoid arbitration bears the burden of proving a contractual defense to enforcement of the arbitration agreement.").

## E

Third, Brendel asserts that the JV Agreement is void under Florida law.  Brendel maintains that the JV Agreement does not comply with Florida law governing the formation of joint ventures because it gives exclusive authority to SSB to enter into contracts on behalf of, and for the benefit of, the joint venture, and does not provide for the duty to share losses. This challenge appears to go to the validity of the entire JV Agreement, not to the Arbitration Agreement specifically, and thus is for the arbitrator in the first instance.  *See Buckeye*, 546 U.S. at 445-46; *see also Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 282 (Fla. Dist. Ct. App. 2003) (quoting *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999)) ("[T]he issue is 'whether a valid written agreement to arbitrate exists,' not whether a valid written contract containing an arbitration provision exists.").

Alternatively, assuming *arguendo* that this is an issue for the court, Brendel has not proved that the JV Agreement is unenforceable.  Under Florida law, these are the essential elements of a joint venture:

> In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained.

*Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla. 1957).  Brendel does not challenge the threshold question—whether the JV Agreement constitutes a valid contract under Florida law.  Rather, he only contests the additional elements required for a joint venture.  But Brendel does not cite any cases in which a contract was not valid under Florida law because, while it had "the essentials of an ordinary contract," it did not have the additional elements required for a joint venture.  And it appears that although a contract that does not provide for mutual control or sharing of losses would fail to establish a *joint venture*, this would not necessarily make the *contract* unenforceable as a non-joint venture contract.  *See, e.g., Pollard v. Browder*, 126 So.2d 310, 311-12 (Fla. Dist. Ct. App. 1961) (holding that contract did not create joint venture because it lacked some essential elements of joint venture; rather, contract created employer-employee relationship); *see also Tidewater Constr. Co. v. Monroe Cty.*, 146 So. 209, 211-13 (Fla. 1933) (concluding that contract did not create joint venture because it lacked some essential elements of joint venture, but not invalidating contract).[7]  This is

---

[7]*Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder International, Inc.*, 2007 WL 628133 (S.D. Fla. Feb. 26, 2007), *aff'd*, 264 Fed. Appx. 878 (11th Cir. 2008), a case that Brendel does not cite, is to the contrary.  In *Servicios* the district court dismissed the plaintiff's breach of contract claim, which was based on a joint venture agreement.  *Id.* at *3.  The court concluded that the joint venture agreement was unenforceable as a matter of law for two reasons: first, there was no meeting of the minds as to all of the essential elements of an enforceable joint venture agreement, because the agreement did not include

especially true when, as here, the parties both maintain that an agreement was formed, and none of them asserts that a joint venture was formed.

Accordingly, Brendel has not met his burden of establishing that there is no agreement to arbitrate or that the Arbitration Agreement is invalid. *See Carter*, 362 F.3d at 297.[8]

---

a right to share in the profits and a duty to share in any losses; and, second, the agreement was at most an agreement to agree in the future, because the language in the agreement contemplated a need for additional negotiation of terms to be incorporated. *Id.* at *2-3. The district court also held that the breach of contract claim was time-barred. *Id.* at *3. The Eleventh Circuit affirmed based on the statute of limitations and did not address whether the agreement was unenforceable. *Servicios*, however, is not binding on this court, because "[f]ederal district court interpretations of state law are not binding 'in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Aurelius Capital Master, Ltd. v. Acosta*, 2014 WL 10505127, at *3 (N.D. Tex. Jan. 28, 2014) (Solis, J.) (quoting *Camreta v. Greene*, 563 U.S. 692, 131 S.Ct. 2020, 2033 n.7 (2011) (citation and internal quotations omitted)). Moreover, the court is not persuaded to follow *Servicios*. The only case it cites for the proposition that a contract fails for not specifying the right to share in profits and duty to share in losses is *Kislak*, 95 So.2d at 514. But in *Kislak* the Florida Supreme Court held only that "the complaint . . . fail[ed] to show a contract sufficient to establish a joint venture." *Id.* at 516. It did not hold, or even indicate, that a contract that attempts to create a joint venture is unenforceable on the basis that, although it has the "essentials of an ordinary contract" (and none of the parties asserts that the contract creates a joint venture), it does not have the additional elements required of a joint venture.

[8]Brendel requests additional discovery on the existence of an agreement to arbitrate to help clarify several disputed issues of fact. But he relies on non-binding cases [Texas state cases interpreting the Texas Arbitration Act, and cases from other federal districts] to support his request. He also fails to specify which disputed facts would possibly be clarified by further discovery or what information he seeks. Because the court can reach its decision today with the evidence in the current record, it declines in its discretion to permit Brendel to conduct additional discovery. *See Bell v. Koch Foods of Miss., LLC*, 358 Fed. Appx. 498, 501 (5th Cir. 2009) (per curiam) (concluding that "the district court did not abuse its discretion in denying the [plaintiffs'] request for arbitration-related discovery").

- 17 -

V

The court now considers whether the dispute in question falls within the scope of the Arbitration Agreement.[9]  Brendel does not argue that this dispute falls outside the scope of the Arbitration Agreement, which applies to "[a]ny controversy or claim arising out of or in relation to this [JV] Agreement or the validity, construction or performance of this [JV] Agreement or the breach thereof . . . ."  Ds. Br. Ex. A, at 4-5.  Because the Arbitration Agreement "contains 'any dispute' language, the court concludes that it is a broad arbitration clause."  *Rodriguez v. John Eagle Sport City Motors, LLP*, 2014 WL 2587599, at *3 (N.D. Tex. June 10, 2014) (Fitzwater, C.J.) (citing *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type.")).  "Moreover, the arbitration clause is considered to be 'broad' because it covers any disputes that are 'related' directly or indirectly to [the JV Agreement]."  *Allee Corp. v. Reynolds & Reynolds Co.*, 2015 WL 1914663, at *6 (N.D. Tex. Apr. 28, 2015) (Fitzwater, J.).  Broad arbitration clauses "'are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute.'"  *Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *3 (N.D. Tex. June 28, 2007) (Fitzwater, J.) (quoting *Pennzoil Exploration & Prod. Co. v.*

---

[9]"In deciding whether the dispute in question falls within the scope of an arbitration agreement, the court applies federal law."  *Allee Corp. v. Reynolds & Reynolds Co.*, 2015 WL 1914663, at *5 (N.D. Tex. Apr. 28, 2015) (Fitzwater, J.) (citing *Graves v. BP Am., Inc.*, 568 F.3d 221, 222-23 (5th Cir. 2009)).

*Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)).   To avoid arbitration on the

ground that his claims are not covered by a broad arbitration clause, Brendel "must adduce

'forceful evidence' in support." *Rodriguez*, 2014 WL 2587599, at \*3 (citing *Mar-Len of La.,*

*Inc. v. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985) (quoting *Nat'l R.R. Passenger*

*Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 140 (7th Cir. 1977))).   "He has not done

so." *Id.*  Thus the court holds that the Arbitration Agreement can be plausibly read to cover

this dispute.

## VI

Because the parties do not raise, and the court is not aware of, any legal constraints

external to the Arbitration Agreement, the court need not address whether any such

constraints foreclose the arbitration of this dispute.

## VII

Finally, the court considers Brendel's assertion that Meyrowitz and SSB waived their

right to arbitration.

## A

"Despite the strong federal policy favoring arbitration, the right to arbitration may be

waived." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. Appx. 462, 464

(5th Cir. 2004) (per curiam) (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156,

1158 (5th Cir. 1986)).[10]   "A 'waiver will be found when the party seeking arbitration

─────────────────────

[10]Brendel maintains that Florida law applies to the issue of waiver.  Meyrowitz and
SSB do not respond to Brendel's waiver argument.  The court concludes, however, that

substantially invokes the judicial process to the detriment or prejudice of the other party.'"
*Id.* (quoting *Price*, 791 F.2d at 1158) (brackets and internal quotation marks omitted).
"Normally, waiver occurs when a party initially pursues litigation and then reverses course
and attempts to arbitrate, but waiver can also result from 'some overt act in Court that
evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"
*Texaco Exploration*, 243 F.3d at 911 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169
F.3d 324, 329 (5th Cir. 1999)).

"'There is a strong presumption against' a finding that a party waived its contractual
right to arbitrate, and 'any doubts thereabout must be resolved in favor of arbitration.'" *Gulf
Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) (quoting
*Texaco Exploration*, 243 F.3d at 911); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-
25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of
arbitration, whether the problem at hand is the construction of the contract language itself or
an allegation of waiver, delay, or a like defense to arbitrability."). "[A] party claiming that
another party waived the contractual right to arbitrate bears a heavy burden to establish the

---

federal law governs whether a party has waived the right to arbitration under the FAA. *See,
e.g., Tristar Fin. Ins. Agency*, 97 Fed. Appx. at 464-65 (applying federal law to interpret
waiver under FAA); *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484-
85 (5th Cir. 2002) (same); *Eman Henshaw v. Park Plaza Hosp.*, 129 F.3d 610, 1997 WL
681184, at *2 (5th Cir. 1997) (per curiam) (same); *Pacheco v. PCM Constr. Servs., LLC*,
2014 WL 145147, at *6 (N.D. Tex. Jan. 15, 2014) (Lindsay, J.) (same), *aff'd*, 602 Fed. Appx.
945 (5th Cir. 2015).

claim." *Gulf Guar. Life Ins.*, 304 F.3d at 484; *see also Price*, 791 F.2d at 1161 ("It is well established that where a party asserts the right to demand arbitration during pretrial proceedings, the party later opposing a motion to compel arbitration necessarily bears a heavy burden in showing waiver.").

B

Brendel contends that Meyrowitz and SSB waived the right to arbitrate by filing an answer to Brendel's state-court second amended petition without asserting the right to arbitrate as an affirmative defense.   Brendel has not carried his heavy burden of demonstrating waiver.  Meyrowitz and SSB did not substantially invoke the judicial process merely by filing an answer.  "To invoke the judicial process '[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 345 (5th Cir. 2004) (quoting *Subway*, 169 F.3d at 329).  Meyrowitz and SSB did not initiate any litigation action in this case; rather, they merely defended themselves against Brendel's claims.  And such activity falls well short of what is required to establish waiver. *See, e.g., Gulf Guar. Life Ins.*, 304 F.3d at 485 (explaining that "Connecticut General did not initiate any litigation action in this case; it merely defended itself against Gulf Guaranty's court claims" and concluding that "Connecticut General did not waive its right to arbitrate its dispute with Gulf Guaranty"); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995) (concluding there was no waiver of right to arbitrate despite removing action to federal court, filing motion to dismiss, filing motion to stay proceedings,

answering complaint, asserting counterclaim, and engaging in discovery); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-78 (5th Cir. 1991) (finding no waiver despite serving interrogatories, requesting production of documents, attending pretrial conference, and waiting thirteen months before seeking to compel arbitration); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency Inc.*, 427 F.2d 924, 928-29 (5th Cir. 1970) (concluding there was no waiver despite filing answer denying liability, filing counterclaims, attempting to implead parties, and allowing depositions before demanding arbitration).

And even if Meyrowitz and SSB substantially invoked the judicial process by filing an answer before filing their motion to compel, Brendel makes no attempt to show how he suffered unfair prejudice.  Brendel filed his original petition in state court on May 5, 2015. Meyrowitz and SSB filed an answer on May 19, 2015, and their first motion to compel arbitration on June 1, 2015.  This short delay in seeking to compel arbitration does not establish waiver.  "Delay by itself 'falls far short' of establishing a waiver." *Tristar Fin. Ins. Agency*, 97 Fed. Appx. at 465 (quoting *Texaco Exploration*, 243 F.3d at 912); *see also id.* ("[Defendant's] eight-month delay in seeking arbitration does not compel a finding of waiver.").

Accordingly, the court holds that Meyrowitz and SSB did not waive their right to arbitrate.

## VIII

Because all of Brendel's claims are subject to mandatory arbitration, the court dismisses this action with prejudice.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d

- 22 -

1161, 1164 (5th Cir. 1992) (holding that district court acted within its discretion when it dismissed case with prejudice after determining that all of plaintiff's claims were subject to arbitration); *Allee Corp.*, 2015 WL 1914663, at *8 (citing *Alford*, 975 F.2d at 1164) (dismissing action with prejudice after determining that all of the issues raised by the parties must be submitted to binding arbitration).[11]

\*   \*   \*

For the reasons explained, Meyrowitz and SSB's motion to compel arbitration is granted, the parties are ordered to arbitrate Brendel's claims in accordance with the Arbitration Agreement, and this lawsuit is dismissed with prejudice by judgment filed today.

**SO ORDERED**.

January 25, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[11]Because the court is dismissing this action with prejudice, Brendel's motion for leave to file his third amended complaint, and Meyrowitz and SSB's motion for protective order are denied as moot.