IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREG BRENDEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-1928-D |
| VS. | § | |
| | § | |
| SCOTT MEYROWITZ, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants Scott Meyrowitz ("Scott") and SSB International, LLC ("SSB"), in one motion, and defendant Mary Meyrowitz ("Mary") in another motion, move to disburse funds held in a Texas state court registry. Plaintiff Greg Brendel ("Brendel") moves for reconsideration of the court's memorandum opinion and order granting defendants Scott and SSB's motion to compel arbitration. *See Brendel v. Meyrowitz*, 2016 WL 302282 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) ("*Brendel I*").[1] Brendel also moves under § 3 of the Federal Arbitration Act for a stay of the proceedings on defendants' motions until a final judgment is entered on his claims that are currently in arbitration. For the reasons explained, the court denies defendants' motions to disburse funds, and denies Brendel's motions to stay and to reconsider.

---

[1]Brendel moves in the alternative for a new trial. But because no trial has been conducted, a motion for new trial is inapposite procedurally.

I

Because this case is the subject of a prior opinion of the court, *Brendel I*, 2016 WL 302282, at *1, the court will recount only the background facts and procedural history that are pertinent to this memorandum opinion and order.

This is a removed action in which Brendel sued Scott, SSB, Mary, Wells Fargo Bank, and Charles Schwab Bank in connection with an investment in precious stones.[2] Brendel alleges that he entered into an agreement with Scott under which, in exchange for the sum of $250,000, Brendel was to receive 50% of the profits, after full reimbursement of his $250,000 payment, from proceeds received from the sale of certain precious stones. Brendel asserts that he wired the sum of $250,000 to Scott's account at Wells Fargo Bank, held in the name of SSB, but, instead of using the funds as agreed, Scott converted them to his personal use and refused to return the $250,000 payment or deliver the precious stones.

Brendel originally brought suit in Texas state court, but it was removed based on diversity of citizenship. Before the case was removed, the state court granted Brendel's application for a temporary restraining order, restraining defendants from transferring or otherwise disbursing monies from accounts belonging to, or controlled by, Scott, Mary, or SSB, in an amount not to exceed $250,000. The state court then held a hearing on Brendel's application for a temporary injunction and found as follows:

    1.  Defendants Scott Meyrowitz, Mary Meyrowitz, and SSB

---

[2]Brendel has voluntarily dismissed Charles Schwab Bank and Wells Fargo Bank as defendants.

International, LLC intend to use, spend, commingle, or disburse funds before this Court can render judgment in this cause;

2.  Unless this restraint is ordered immediately, Plaintiff will suffer irreparable injury immediately, because no other legal remedy can be obtained or effected before the injury occurs;

3.  Plaintiff will probably be awarded a recovery in this cause;

4.  If Defendants' threatened conduct as described above is not enjoined during the pendency of this suit, Plaintiff will be injured because Defendants will be unable to pay damages;

5.  The Court finds Mary Meyrowitz and Scott Meyrowitz are in control of account number 0609[3] with [Scott Trade], or such other account as Scott Trade owned or beneficially owned by Mary Meyrowitz and/or Scott Meyrowitz.

6.  Plaintiff has exercised due diligence in prosecuting the underlying claim in this cause;

7.  Plaintiff's injury will outweigh any injury to Defendant(s) that may occur on issuance of this injunction;

[8.]  The injunction will not work a disservice on the public interest;

[9.]  Defendants' intended conduct as described above will change the status quo, which should be maintained in the public interest[.]

Ds. Br. Ex. 1.  The state court issued a temporary injunction order and order to deposit funds into the court registry (the "Order").  In the Order, the state court ordered Brendel to post a bond in the amount of $20,000; ordered Scott Trade to deposit the sum of $250,000 into the

---

[3]The court has truncated the account number to the last four digits.  *See* Fed. R. Civ. P. 5.2(a)(4).

court registry from account number 0609,[4] or such other account at Scott Trade owned or beneficially owned by Scott and Mary; ordered that the sum of $250,000 remain in the court registry until entry of final judgment; and entered a temporary injunction enjoining Scott, Mary, and SSB from using, spending, commingling, or disbursing funds from that account, in an amount up to $250,000, until the monies were deposited into the court registry or the entry of judgment in the case.

After the case was removed, the court denied Brendel's motion to remand the case. In *Brendel I* the court granted Scott's and SSB's motion to compel arbitration. *See Brendel I*, 2016 WL 302282, at *10. The court ordered that Brendel arbitrate his actions against Scott and SSB in accordance with the arbitration clause (the "Arbitration Agreement") in the Joint Venture Agreement, and it dismissed Brendel's claims against Scott and SSB. *See id.*

Scott and SSB, in one motion, and Mary, in another motion, move the court to disburse the funds held in the Texas state court registry. Brendel opposes the motions. He also moves to stay the proceedings on defendants' motions to disburse funds until final judgment is entered on his claims that are currently in arbitration, and he moves the court to reconsider *Brendel I.*

In *Brendel I* the court held that Brendel, Scott, and SSB agreed in the Arbitration Agreement to arbitrate the dispute at issue, and that no legal constraints external to the Arbitration Agreement foreclosed arbitration. *Brendel I*, 2016 WL 302282, at *3-9. The

---

[4]The Order specified the account number. The court has truncated it. *See supra* note 3.

- 4 -

court also concluded that Scott and SSB had not waived their rights to arbitration. *Id.* at *9-10. At the conclusion of the memorandum opinion and order, however, the court stated: "For the reasons explained, [Scott] and SSB's motion to compel arbitration is granted, the parties are ordered to arbitrate Brendel's claims in accordance with the Arbitration Agreement, and this lawsuit is dismissed with prejudice by judgment filed today." *Id*. at *10. The court has not in fact entered a judgment dismissing the suit, and, as the court explains below, it did not intend to order Brendel to arbitrate his claims against Mary or to dismiss Brendel's lawsuit against Mary.

## II

"Interlocutory state court orders are kept in force upon removal of a case to federal court by 28 U.S.C. § 1450." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988). Section 1450 provides, in pertinent part:

> Whenever any action is removed from a State court to a district court of the United States . . . .
>
> All bonds, undertakings, or security given by either party in such action prior to its removal shall remain valid and effectual notwithstanding such removal.
>
> All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.

28 U.S.C. § 1450. "[B]y ensuring these orders do not lapse upon removal, the statute facilitates the federal court's taking the case up 'where the state court left it off.'" *Nissho-Iwai Am.*, 845 F.2d at 1303 (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415

U.S. 423, 437 (1974)).  "The federal court accepts the case in its current posture 'as though everything done in state court had in fact been done in the federal court.'"  *Id.* (quoting *Savell v. S. Ry.*, 93 F.2d 377, 379 (5th Cir. 1937)).  "In the end, judicial economy is served by eliminating the need for duplicative proceedings in federal court."  *Id.* (citing *Granny Goose Foods*, 415 U.S. at 436-37).  Put another way, "whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed."  *Id.* at 1304.  "The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered."  *Id.*

> If, for example, it appears that the state court imposed sanctions inconsistent with federal standards, the federal court should not be fettered by considerations of deference from independently developing the record and then modifying or dissolving the order, as the circumstances may require.  Conversely, however, the policy of judicial economy promoted in *Granny Goose Foods* mitigates against our imposing an obligation on the district courts to conduct a determination *de novo* of the propriety of state court sanctions carried with the case upon removal to federal court, every time such an order is contested. The district court is perfectly free to adopt the state court record as the basis for sustaining a challenged state court order, as was done by the court below.

*Id.*  Thus, under § 1450, the Order issued by the state court did not lapse upon removal; rather, it was transformed into a federal order, and it remained in full effect after removal.

## III

Mary moves the court to disburse the funds held in the Texas state court registry on the ground that this court has already ruled in her favor and dismissed Brendel's claims

against her.  But the court has not ruled in Mary's favor.  As the court explains *infra* at § V, *Brendel I* did not address whether Brendel's action against Mary must be arbitrated.  Scott and SSB did not move to compel Brendel to arbitrate his action against Mary, and they did not argue that the Arbitration Agreement applied to her.  And Mary neither moved the court to compel arbitration of Brendel's claims against her nor argued that the Arbitration Agreement applied to her.  Accordingly, in *Brendel I* the court did not order Brendel to arbitrate his action against Mary, and it did not dismiss Brendel's claims against Mary.  Because Mary's sole ground in support of her motion to disburse the funds in the state court registry is that the court has already ruled in her favor, the court denies her motion.

IV

Scott and SSB move the court to disburse the funds held in the Texas state court registry on the ground that the court did not specifically state in *Brendel I* that the Order was to remain in effect after dismissal of Brendel's actions against Scott and SSB, so the Order terminated when the actions against them were dismissed.  Scott and SSB fail, however, to support their position.

Although the court was certainly free to modify or abrogate the Order—and is still free to do so, as with any "interlocutory order it might itself have entered"—the court did not address the Order in *Brendel I* because the parties did not raise it as an issue.  And Scott and SSB have yet to provide the court a persuasive reason to modify or dissolve the Order, especially considering that the Order applies to Mary, and that Brendel has not been compelled to arbitrate his claims against her.

- 7 -

Because the court has neither modified nor dissolved the Order, it remains in effect until the court modifies or dissolves it or until, as the Order itself directs, a final judgment is entered. A final judgment within the meaning of the Order has not been entered because Brendel's claims against Scott and SSB are currently in arbitration, and his action against Mary remains pending. Accordingly, the Order remains in force, even though the court has ordered Brendel, Scott, and SSB to arbitrate Brendel's claims, and has dismissed Brendel's actions against Scott and SSB. Because Scott and SSB offer no other reasons to support modifying or dissolving the Order so that the funds in the state court registry can be disbursed, the court denies their motion.[5]

V

Brendel moves the court to reconsider *Brendel I*. He maintains for the first time that Mary was not a party to the Arbitration Agreement, and he contends that *Brendel I* can be interpreted to dismiss his claims against her. Scott and SSB did not move to compel Brendel to arbitrate his actions against Mary, however, and they did not argue that the Arbitration Agreement applied to Mary. Scott and SSB have also failed to respond to Brendel's motion to reconsider, or argue that *Brendel I* applies to Mary.

---

[5]Brendel maintains that, because the court dismissed this suit against Scott and SSB, the court no longer has authority to dissolve or modify the Order, and that such a ruling must be made by the state court. The court disagrees. Even assuming *arguendo* that the court could lose its authority after entering a final judgment, the court is only today entering a Rule 54(b) final judgment dismissing Brendel's action against Scott and SSB, and it is doing so after filing this memorandum opinion and order denying their motion to disburse the funds from the state court registry.

Although *Brendel I* for the most part does not need clarification, the court's concluding statement that "the lawsuit"—rather than part of the lawsuit—is dismissed with prejudice is potentially confusing and merits clarification. Accordingly, the court clarifies that *Brendel I* applies only to Brendel, Scott, and SSB, not to Mary. In *Brendel I* the court granted Scott and SSB's motion to compel arbitration, ordered that Brendel, Scott, and SSB arbitrate Brendel's claims in accordance with the Arbitration Agreement, dismissed Brendel's claims against Scott and SSB, and denied as moot Brendel's motion for leave to file his third amended complaint as to Scott and SSB. *Brendel I*, 2016 WL 302282, at *10 & n.11. The court did not address Brendel's action against Mary, did not order Brendel to arbitrate his claims against Mary, did not dismiss Brendel's claims against Mary, and did not deny Brendel's motion for leave to file his third amended complaint as to Mary.

Because Brendel's motion to reconsider is based solely on the premise that he should not be compelled to arbitrate his claims against Mary because she was not a party to the Arbitration Agreement, and because *Brendel I* does not compel him to arbitrate his claims against her, the court denies his motion for reconsideration.

VI

Because *Brendel I* does not apply to Brendel's action against Mary, the court grants Brendel's motion for leave to file his third amended complaint as to Mary. He must file the third amended complaint within 21 days of the date this memorandum opinion and order is filed. In *Brendel I* the court stated that "this lawsuit is dismissed with prejudice by judgment filed today." Fortuitously, a judgment was never entered. Accordingly, because the court

has yet to enter the judgment that *Brendel I* in part contemplates, the court is doing so today pursuant to Fed. R. Civ. P. 54(b), and it dismisses Brendel's actions against Scott and SSB with prejudice.

\*   \*   \*

For the reasons explained, the court denies defendants' motions to disburse funds, denies Brendel's motion to stay, and denies Brendel's motion for reconsideration.  The court enters a Rule 54(b) judgment dismissing Brendel's actions against Scott and SSB.

**SO ORDERED**.

April 29, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE