IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GREG BRENDEL,                          §
                                       §
                    Plaintiff,         §
                                       §  Civil Action No. 3:15-CV-1928-D
VS.                                    §
                                       §
SCOTT MEYROWITZ, et al.,               §
                                       §
                    Defendants.        §

MEMORANDUM OPINION
AND ORDER

In this removed action arising from an investment in precious stones, the instant

motions require the court to decide whether a party may intervene to assert her interest as a

judgment creditor in another lawsuit in funds that were paid into the state court registry in

this case, and whether to confirm or vacate an arbitration award. It must also decide whether

to take judicial notice of an arbitration award or state court injunction. For the reasons

explained, the court grants a limited intervention; takes judicial notice of the existence of a

state court injunction; grants in part and denies in part the motion to confirm the arbitration

award, enter final judgment, and release funds; and denies the motion to vacate the

arbitration award.

I

Because this case is the subject of two prior memorandum opinions and orders, *see*

*Brendel v. Meyrowitz*, 2016 WL 1721312, at *1 (N.D. Tex. Apr. 29, 2016) (Fitzwater, J.)

("*Brendel II*"); *Brendel v. Meyrowitz*, 2016 WL 302282, at *1 (N.D. Tex. Jan. 25, 2016)

(Fitzwater, J.), the court will recount only the background facts and procedural history that are pertinent to this decision.

Plaintiff Greg Brendel ("Brendel") sued Scott Meyrowitz ("Scott"), Mary Meyrowitz ("Mary"), and SSB International, LLC ("SSB") in connection with an investment in precious stones.[1]  Brendel alleges that he entered into an agreement with Scott under which, in exchange for the sum of $250,000, Brendel was to receive 50% of the profits, after full reimbursement of his $250,000 payment, from proceeds received from the sale of certain precious stones.  Brendel asserts that he wired the sum of $250,000 to Scott's account at Wells Fargo Bank, held in the name of SSB, but, instead of using the funds as agreed, Scott converted them to his personal use and refused to return the $250,000 payment or deliver the precious stones.

Brendel originally brought suit in Texas state court, but it was removed based on diversity of citizenship.  Before the case was removed, the state court ordered that $250,000 be taken from an account controlled by Scott and Mary and deposited into the court registry, to remain there until entry of final judgment.  The state court's order remains in effect until this court modifies or abrogates it, which it has not done, or until a final judgment is entered. *See Brendel II*, 2016 WL 1721312, at *4.

After the case was removed, this court granted Scott and SSB's motion to compel arbitration.  Brendel's evidence at the ensuing arbitration included defendants' financial

---

[1]Brendel also sued Charles Schwab Bank and Wells Fargo Bank, but he has voluntarily dismissed them as defendants.

records.  Brendel won an arbitration award of $1,018,254.22 (the "Arbitration Award").

Brendel moves to confirm the Arbitration Award, enter judgment in his favor, and release

to him the funds held in the state court registry.  Brendel also asks the court to take judicial

notice of the Arbitration Award and the state court injunction.  Scott and SSB move to vacate

the Arbitration Award.

Aside from Brendel's claims against Scott and SSB, which were arbitrated, he also

alleges claims against Mary that were not subject to arbitration, and remain pending in this

lawsuit.

A few days after Brendel moved to confirm the Arbitration Award, Sarah Pappas

("Pappas") moved to intervene in this case as a defendant and intervenor-counterplaintiff.

Pappas alleges that she was a victim of a similar scheme to the one that Brendel alleges in

this case, and she claims an interest in the funds that were paid into the state court registry.

Pappas maintains that she is entitled to some or all of the registry funds because she has an

Arizona state court default judgment against Scott, Mary, and SSB; the registry funds are

traceable to an unpaid loan from Pappas to Scott, Mary, and SSB; and she has obtained a

writ of execution that was levied on the registry funds.  Brendel opposes the motion to

intervene.

Aside from Pappas' motion to intervene, Brendel also asks the court to take judicial

notice of the Arbitration Award and the state court injunction; Brendel moves the court to

confirm the Arbitration Award, enter final judgment, and release funds to him; and Scott and

SSB move the court to vacate the Arbitration Award.

II

Brendel requests that the court take judicial notice of the state court injunction and the Arbitration Award.  The other parties have not responded to this request.

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  A judicial act in state court falls within the category of sources "whose accuracy cannot reasonably be questioned," and may be judicially noticed.  *See Colonial Leasing Co. of New Eng. v. Logistics Control Grp. Int'l*, 762 F.2d 454, 459 (5th Cir. 1985); 21B Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5106.4, at 240 (2d ed. 2005 and Supp. 2016).

Accordingly, the court takes judicial notice of the state court injunction, but only for its existence, not for the correctness of any facts found.  *See Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) ("Although we cannot take judicial notice of findings of fact of other courts, the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice.").  The court declines, however, to take judicial notice of the Arbitration Award at this time.  Brendel cites no authority to support judicial notice in these circumstances, and he does not explain the reason for his request.  The court therefore limits its decision to the question whether to confirm the Arbitration Award, as set out below.

III

The court now turns to Pappas' motion to intervene.  Pappas moves to intervene as of right, or, alternatively, to intervene permissively.

A

A party is entitled to an intervention as of right under Rule 24(a)(2) if (1) the motion to intervene is timely, (2) the interest asserted by the potential intervenor is related to the action, (3) the interest may be impaired or impeded by the action, and (4) the interest is not adequately represented by the existing parties.  *See, e.g.*, *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009); *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) ("*NOPSI*")).

B

The first element—timeliness—is determined by examining (1) the length of time between the potential intervenor's learning that its interest is no longer protected by the existing parties and its motion to intervene, (2) the extent of prejudice to the existing parties from allowing late intervention, (3) the extent of prejudice to the potential intervenor if the motion is denied, and (4) any unusual circumstances.  *See, e.g.*, *Lease Oil Antitrust Litig.*, 570 F.3d at 247-48.

1

Pappas contends that her motion to intervene is timely because she obtained the Arizona default judgment on August 16, 2016, promptly sought counsel in Dallas, and

- 5 -

moved to intervene in this case on October 31, 2016. And she maintains that her intervention would not prejudice the existing parties because her only interest is in the registry funds, not the claims in the case, and therefore that her invention will not delay the progress of matters such as discovery.

Brendel responds that the putative intervention is untimely because it will unduly prejudice the original parties. He contends that the intervention will lead to collateral proceedings to challenge the jurisdiction of the default judgment, resolve choice of law issues, and explore the merits of the Pappas claim. And he posits that this case is very nearly completed, because the only remaining decision is whether to confirm the Arbitration Award.

Pappas replies that her intervention is timely under the standard. She contends that collateral proceedings will be brief or unnecessary, because her Arizona default judgment is presumed valid, and no evidence has been offered against it. And she posits that her only likely involvement with the claims in the case relates to whether Brendel can establish a constructive trust over the registry funds. Finally, she contends that Brendel's claims against Mary remain to be determined, indicating that resolution of this case is not imminent.

2

The court concludes that Pappas' motion to intervene is timely. Brendel's arguments primarily relate to the second timeliness factor: the extent of prejudice to the existing parties from allowing intervention at this stage. But even assuming that Brendel is correct that Pappas' intervention will lead to collateral disputes about the validity of the default judgment, a foreign judgment that appears valid on its face is presumed valid in Texas. *See*

*Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex. 1975).  And if Pappas can show the requisite interest in the property before the court, then the court has a responsibility to adjudicate the issue of priority on the merits, notwithstanding the prejudice to Brendel from delay.  *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 59 (S.D.N.Y. 2013) (holding that intervention was timely despite disruption of existing plaintiffs' priority agreement).  In an analogous case, the Fifth Circuit held that intervention to assert a tax lien on the *res* before the court was timely when it came one year into the suit, and after the close of discovery.  *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970).

> Since few legally significant events have occurred in the separate part of the case in which the Government is involved, and since many courts have allowed intervention in meritorious cases after trial, after judgment, and even after settlement, we cannot find that the time of the application caused prejudice to [the existing party's] rights of a magnitude sufficient to justify overturning the trial court's decision.

*Id.* at 1126 (citations omitted).  The Fifth Circuit has also held that intervention to assert a subrogation interest in funds paid into the court registry was timely even after judgment.  *See McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1071-73 (5th Cir. 1970).  And other courts have approved intervention at advanced stages of a dispute but prior to judgment.  *See Karsner v. Lothian*, 532 F.3d 876, 886-87 (D.C. Cir. 2008) (holding that motion to intervene in arbitration confirmation was timely); *Peterson*, 290 F.R.D. at 58-59 (holding that judgment creditors' motion to intervene three days prior to summary judgment decision was timely).  Accordingly, the court concludes that Pappas' motion is timely.

- 7 -

C

The second element for assessing a motion to intervene as of right considers whether the interest asserted by Pappas is related to this lawsuit.

1

Pappas contends that her interest in the registry funds is sufficiently related to justify intervention as of right.  She asserts an interest, first, as a judgment creditor of defendants. *See Diaz*, 427 F.2d at 1124.  And she maintains, second, that the registry funds are traceable to her specific payment to defendants.  *Cf. Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970) (granting intervention for attorney to assert interest in legal fees portion of settlement funds).

Brendel responds that Pappas has no direct, substantial, and legally protectable interest in this litigation, as required for intervention as of right.  *See NOPSI*, 732 F.2d at 463. He contends that Pappas can only show an economic interest in a general pool of funds, not a legitimate substantive right to these particular funds, as Rule 24(a)(2)requires.  *See id.* at 470.  As an example, Brendel cites *Doe v. Ejercito de Liberacion Nacional*, 2012 WL 10713165, at *2-3 (S.D. Fla. Aug. 2, 2012), in which the court denied intervention because the movant (a judgment creditor of a foreign terrorist group) could only show a general economic interest in recovering from the defendant.  And Brendel argues that, if Pappas' logic were accepted, any creditor of the defendants could intervene in this litigation, which cannot be a correct result.

Brendel also contends, based on a reading of the record in this case and the arbitration,

- 8 -

that the registry funds are not traceable to Pappas.  And he questions the bona fides of Pappas' claim, maintaining that some of defendants' creditors are complicit in defendants' illegitimate transactions.

Pappas replies that she has obtained a writ of execution that has been levied on the registry funds.  She posits that these steps give her a judicial lien on the registry funds, establishing the requisite property interest to intervene, and that she is entitled to recover unless Brendel can establish a constructive trust on the registry funds.[2]

2

The court concludes that Pappas has an interest related to this action, as required for intervention as of right.  Accepting at face value Pappas' representation that a writ of execution has been levied on the registry funds, she has a legally protectable interest in the property that is the subject of this case.  *See Diaz*, 427 F.2d at 1124.  In the context of a Rule 24(a)(2) motion, the judicial lien that Pappas asserts here is analogous to the tax lien that the Fifth Circuit held to be a sufficient interest in *Diaz*.  *See id.* ("[T]he Government in this case is asserting a tax lien, clearly a legally cognizable interest in property, which it seeks to attach to a res that is before the court.  Interests in property are the most elementary type of right that Rule 24(a) is designed to protect.").  Moreover, the decision of the district court in *Peterson*, which this court recognizes as persuasive authority on this point, suggests that

---

[2]Pappas represents that the writ of execution was levied on the registry funds on November 21, 2016, the same day that Brendel's response brief on the motion to intervene was due.

Case 3:15-cv-01928-D   Document 85   Filed 03/30/17   Page 10 of 16   PageID 1835


Pappas' interest is sufficient to intervene.  In *Peterson* the district court approved intervention by judgment creditors who had obtained a writ of execution and sought to assert a competing claim against frozen Iranian assets that were the subject of the litigation.  *See Peterson*, 290 F.R.D. at 59.

The authorities that Brendel cites are distinguishable.  The Fifth Circuit denied intervention in *NOPSI* because the would-be intervenors only had an economic interest in the case: they sought to avoid increased utility costs by asserting another party's contract right.  *See NOPSI*, 732 F.2d at 470.  The would-be intervenors therefore had no "basis for a legally protectable interest or for possession of the substantive legal right—enforcement of the contract—which they seek to assert by intervention[.]"  *Id*.  In the instant case, by contrast, Pappas has asserted a legally protectable property right in the *res* before the court.  Brendel's other authority, *Ejercito de Liberacion Nacional*, is distinguishable on a similar basis.  In that case the district court denied intervention by a judgment creditor who sought to recover from the defendants, but there was no *res* before the court, as is the case here, nor had the would-be intervenor obtained a judicial lien that created a property interest.  *See Ejercito de Liberacion Nacional*, 2012 WL 10713165, at *2-3.

Finally, because Pappas has established her interest in this litigation based on a judicial lien, the court need not decide at this time whether the registry funds are traceable to her.

D

The third factor the court assesses is whether Pappas' interest may be impaired or impeded by the action.

1

Pappas contends that the action will impair her interest because Brendel seeks to recover the registry funds, which Pappas maintains are her best chance to collect on her own judgment.  Brendel responds that, although an intervention would undoubtedly aid Pappas, it will potentially shunt him into the same position that Pappas now occupies—a judgment creditor who has difficulty collecting.  He maintains that his extraordinary efforts to secure the registry funds in the first place, including paying a $20,000 bond, should entitle him to recover.

2

That court concludes that Pappas' interest in the registry funds may be impaired if Brendel prevails in this lawsuit.  *See Gaines*, 434 F.2d at 54.  Although Brendel correctly observes that the registry funds were only preserved through his diligence, this does not negate the potential for the lawsuit to impair whatever interest Pappas can establish in them.

E

The court evaluates under the fourth element whether Pappas' interest is adequately represented by the existing parties.

1

Pappas contends that no party represents her interest; rather, her interests are adverse

- 11 -

to those of the other parties because Brendel has a competing claim to the registry funds, and "[d]efendants, as judgment debtors, presumably have no interest in assisting their creditors' collections against them." Pappas Br. 8. Brendel responds that his interest is only adverse to Pappas to the extent that defendants have a finite pool of assets; their rights are not transactionally related.

2

The court concludes that Pappas' interest is not adequately represented by the existing parties, because they are adverse to her. *See Gaines*, 434 F.2d at 54. Brendel is pursuing a competing claim to the registry funds, and defendants are the parties against whom Pappas seeks to recover.

F

The court concludes that Pappas meets all of the Rule 24(a)(2) criteria for intervention as of right. Because her motion, briefing, and proposed complaint in intervention indicate that she seeks only to assert her interest in the registry funds as a judgment creditor, the court grants a limited intervention for the purpose of determining Pappas' rights in the funds held in the state court registry. *See, e.g.*, *McDonald*, 430 F.2d at 1071-73 (granting limited intervention to assert subrogation interest in funds held in court registry). The court otherwise denies the motion.

IV

The court now turns to Brendel's motion to confirm the Arbitration Award, enter final judgment, and release funds to plaintiff, Pappas' objection to confirmation, and Scott and

- 12 -

SSB's motion to vacate the Arbitration Award.

A

Review of an arbitration award is "exceedingly deferential." *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F.Supp.2d 545, 548 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004)). When the Federal Arbitration Act applies, as here, the court will set aside an arbitration award "'only in very unusual circumstances.'" *Fountoulakis v. Stonhard, Inc.*, 2003 WL 21075931, at *4 (N.D. Tex. May 9, 2003) (Fitzwater, J.) (quoting *Williams v. CIGNA Fin. Advisors Inc.*, 197 F.3d 752, 757 (5th Cir. 1999)). Courts "must" confirm the arbitration award unless there is a ground for correction, modification, or vacatur under 9 U.S.C. §§ 10(a) or 11. *See Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding there are no longer nonstatutory grounds for vacating arbitration awards). Section 10(a), which prescribes the grounds for vacating an arbitration award, "does not provide for vacatur of an arbitration award based on the merits of a party's claim," and thus the court "do[es] not have authority to conduct a review of an arbitrator's decision on the merits." *Householder Grp. v. Caughran*, 354 Fed. Appx. 848, 851 (5th Cir. 2009) (per curiam) (citing *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 357 (5th Cir. 2004), *overruled on other grounds by Bacon*, 562 F.3d 349)). "'The court may not vacate the [arbitrator's] award based on mere errors in interpretation or application of the law, or mistakes in factfinding.'" *Weber*, 455 F.Supp.2d at 549 (quoting *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 726 (N.D. Tex. 1997) (Fitzwater, J.)). "The court must resolve any doubts or uncertainties in favor of

- 13 -

upholding the award." *Id.* (citing *Brabham*, 376 F.3d at 385 n.9).   "By consenting to arbitration, parties exchange 'the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Mantle*, 956 F.Supp. at 726 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).   "The question the court asks is 'whether the arbitration proceedings were fundamentally unfair.'" *Weber*, 455 F.Supp.2d at 549 (quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir. 1990)).

B

Brendel moves to confirm the Arbitration Award, for judgment, and for release of the registry funds.  Pappas objects to Brendel's motion to the extent he seeks release of the registry funds or entry of a judgment that adjudicates the respective rights of Pappas and Brendel to the funds.  Scott and SSB move to vacate the Arbitration Award, contending that Brendel unlawfully obtained some of his arbitration evidence by accessing defendants' financial records without their authorization.[3] They maintain that, by considering this evidence, the arbitrator manifestly disregarded Florida law, and the Arbitration Award should be vacated on that basis.  Defendants acknowledge that "manifest disregard of the law" is no longer recognized as a ground for vacatur in the Fifth Circuit, *see Bacon*, 562 F.3d at 358, but they nevertheless urge the court to consider their argument on public policy grounds.

---

[3]They rely on Fla. Stat. Ann. §§ 655.0322(6), 655.059(2)(b).

- 14 -

C

The court concludes that the Arbitration Award must be confirmed, and that Brendel is entitled to judgment confirming the Arbitration Award. Scott and SSB have not shown that the arbitrator improperly relied on their financial records, at least for the reason that they agreed to admit the records in question as a joint exhibit at arbitration. And in any event, Scott and SSB do not contend that consideration of the records corresponds to any recognized ground for vacatur of the Arbitration Award. *See id.* Brendel is therefore entitled to judgment against Scott and SSB confirming the Arbitration Award and awarding judgment in his favor in the amount of the Arbitration Award. *See id.*

Brendel has not yet shown, however, that he is entitled to recover the funds held in the state court registry. His request to release the registry funds is therefore denied without prejudice. Brendel and Pappas are directed to confer and submit a joint scheduling proposal for adjudicating priority of their claims to the registry funds. This does not revive any deadlines in the court's December 6, 2016 scheduling order regarding Brendel's claims against Mary, all of which have now expired.

\* \* \*

Accordingly, the court grants Pappas' motion to intervene for the purpose of determining her rights in the funds held in the state court registry; grants in part and denies in part Brendel's request for judicial notice; grants in part and denies in part Brendel's motion to confirm the Arbitration Award, enter final judgment, and release funds; and denies Scott and SSB's motion to vacate the Arbitration Award. The court is entering a Rule 54(b)

final judgment today confirming the Arbitration Award and awarding Brendel the sum of

$1,018,254.22 from Scott and SSB.

**SO ORDERED**.

March 30, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 16 -